THOMPSON
vs.
BLACKWELL, &c.

---

## Thompson *vs.* Blackwell, &c.

Case 20.

### APPEAL FROM WASHINGTON CIRCUIT.

ORD. PET

1. That provision of the *Revised Statutes*, chap. 106, sec. 40, in regard to proof of what deceased and absent witnesses had stated on former trials in regard to the matters in controversy in will cases, was intended to apply particularly to cases where wills had been admitted to record and again contested by others not parties to the first probate in the county court, thereby perpetuating the testimony—an enlargement of the common law rule. But the right to introduce such evidence against parties privy, on laying the proper foundation therefor, is not affected by the statute.

2. It is not necessary that a witness, introduced to prove what a deceased or absent witness had proved or stated on a former trial, should be able to give the precise words or all the words used by such witness; it is sufficient if he be able to state the substance of all that was sworn to by the deceased or absent witness. 1 *Greenleaf Ev.* 96.

THOMPSON
vs.
BLACKWELL, &c.

3. In will cases it is the province of the jury to decide where the evidence is conflicting, and if there has been no misdirection of the court upon the questions of law involved, the court should not disturb the finding, unless it be so unsupported by proof as to require it.

4. This court has not the power to reverse a decision of a jury and judgment of the court in a will case, because the jury were not sworn to say how much of the paper produced was the will of the testator. If the oath of the jury required them to decide upon the validity of the whole will, such objection should have been made at the swearing of the jury. No substantial right of the party has been prejudiced, for which alone this court can reverse.

[The facts of the case are stated in the opinion of the court.—REP.]

*R. J. Browne and J. Shuck* for appellant.

1. The first question is, should the paper propounded as the will of Sally Thompson be admitted to record as her true last will and testament? We contend that it should, for the following reasons. 1. It is duly executed by her, and attested by the requisite number of witnesses, and its execution proved. 2. The capacity of the testatrix is abundantly proved by every witness who has spoken on that subject, save one, and he an uncle of the contestants.

2. The great objection against the will relates to its execution and attestation. That there was not sufficient proof that the will was read to the testatrix, or that she knew its contents. The law presumes a knowledge of the contents of a will by a testator from the fact of its execution. (*Shanks vs. Christopher*, 3 *Marshall*, 145.) In this case the court said: "The execution by the testator, with the requisite solemnities, does of itself create a presumption of his knowledge of its contents, and that they conform to his intention." Again, 5 *Georgia Reports*, 456, it is said: "The usual mode in which assent is manifested to a will is by subscribing it or acknowledging the signature in the presence of the witnesses; and, ordinarily, the execution of it would be sufficient evidence of the testator's knowledge of its contents."

3. It is said, by appellees, that the evidence shows that the testatrix did not know the contents of the will. This is denied—all the proof goes to show that she was a discreet woman in respect to signing papers, and that after it was signed she confided it to a particular friend for safe keeping. It also shows that its provisions were, at least in part, in conformity to a previously expressed purpose.

4. We insist that the court erred in permitting the witness to detail to the jury what George C. Thurman, who had died, had detailed in evidence on a former trial, and which had not been reduced to writing. Its competency is denied under our statutes of wills.

5. The instructions of the court were misleading and erroneous. The first instruction attaches too much importance to the fact that the will was written by Thurman, in Springfield, and under the direction of B. Thompson, in the absence of the testatrix. That fact was not important, if, when she signed it, she acknowledged it as her will. (*Jones vs. Jones, &c.*, 14 *B. Monroe*, 472.)

The second instruction was unauthorized. There is no proof that B. Thompson ever exercised any influence over his mother in the execution of the will, or in regard to any other transaction. And the proof shows that, if ever a son deserved a bounty from an aged and decrepid mother, it is this son, Barnabas Thompson. For eight or nine years he and his family had carefully and kindly nursed her, administering to her wants, when the contestants, so far as the proof shows, never visited her or manifested any kindly feeling for her.

6. The jury were sworn, as the record shows—"well and truly to try the issue." There is no issue made in the case so far as the record shows. According to the *Revised Statutes, title Wills, sec.* 36, *page* 699, the jury should have been sworn to try whether the testamentary paper produced, or how much thereof, was the last will and testament of the

supposed testatrix. The proof does not show the identity of the paper except inferentially. We contend, that for the failure to pursue the statute, the verdict should be set aside.

7. The verdict of the jury is not sustained by the evidence. The proof is entirely conclusive to show that this testatrix had full capacity, and it is needless to recapitulate it. The proof, to be sure, is not positive, that the will was read to the testatrix, but it is sufficient to show, presumptively, that it was, as it is shown that it was, her habit, not to sign papers without understanding their import; and Mrs. Pierce thinks she heard John Funk reading or explaining the will to the testatrix.

The will is wholly in the hand-writing of George C. Thurman, except signature and attestation. He is proved to be a lawyer of pretty extensive practice, and a high minded honorable man. He did not have a distinct recollection about the matter. McElroy thinks, after declining himself, to write the will, that he took a memorandum to George C. Thurman, and had some conversation with him on the subject. It is quite probable, that Barnabas Thompson took the will written by Thurman, to his mother, and read it to her. When Funk, the subscribing witness, asked her if she acknowledged, she answered emphatically, "yes, I do." She gave it into the hands of Funk for safe keeping. All these circumstances show most satisfactorily that the testatrix knew well what she was doing. The testimony shows also, that in several respects, that will is in accordance with a previously expressed intention. It is, moreover, a just will to B. Thompson, who was the main stay and comforter of an aged and helpless mother.

*J. Harlan* on the same side—

The record in this case presents two questions for the decision of this court. 1. Whether upon the facts, as proved on the trial in the circuit court, the paper purporting to be the last will and testament of

Sarah Thompson, deceased, should not have been admitted to record? 2. Whether the evidence of Hayes and Swon, as to the evidence given by Geo. C. Thurman on the trial in the county court, was or not competent?

1. The decision of the first question depends upon an examination of the whole evidence. Without calling the attention of the court to the evidence of the several witnesses, I think it may be assumed, that the facts proved, not only authorised, but required, that the paper in question should have been admitted to record as the last will of Sarah Thompson. It is not pretended there was any lack of capacity to make a will; nor that the testatrix was subject to be improperly influenced by any person. The ground of attack is she did not *understand* the contents of the paper when she executed it. She said at the time, she understood the contents of the paper. And the whole tenor of the proof shows she would not execute any paper without understanding its contents. The evidence shows that the paper was duly executed, and after the introduction of such proof, the burthen of proof was shifted to the other side, and the effort of those opposing the will was, it seems to me, a total failure.

2. As respects the competency of the evidence given by Hays and Swon, and of the evidence given by Thurman on the trial of the county court.

Hays closes his evidence by saying, that his *"recollection of what Thurman said was very imperfect."* Swon concurs with Hays.

I will undertake to show by authorities, English and American, that this evidence should not have been admitted.

In *The King vs. Joliffe*, 4 *Durnford, and East*. 290, (*cited* 4 *T. R.*,) Lord Kenyon, chief justice, decided, that as the witness could not give the words, but could only swear to the *effect* of the evidence given by a deceased witness, the evidence must be rejected. The supreme court of Vermont decided, in

*Marsh vs. Jones*, 21 *Ver.* (6 *Wash.*,) 378, "that when a witness, who has once testified on a trial of a case, has deceased, his testimony may be used upon a subsequent trial of the same case, provided the substance of what he testified, both in chief and on cross-examination, can be proved in the *very words* used by him."

In *Commonwealth vs. Richards*, 18 *Pickering*, 434; *Smith vs. Smith*, 1 *Wright*, (*Ohio*,) 643; *Warren vs. Nichols*, 6 *Metcalfe*, 261, it was decided: "It is not enough, in proving what a deceased witness formerly testified to, to prove the substance of the testimony of the deceased witness, but the *whole of his testimony* and the precise words must be given."

If the rule should be relaxed, and the substance of the testimony of the deceased only should be required, the whole thereof must be given. In this case, Mr. Hays said, his "*remembrance of what Thurman said was very imperfect.*" (*P.* 22.)

In *United States vs. Wood*, 3 *Washington Circuit Court Reports*, 440, the court refused to permit a reporter who had taken down the evidence of the deceased witness to prove what he had said on a former trial because "he could not say that he recollected the *words* of Hare, (the deceased witness;) though he felt the most entire confidence that he had taken down as the witness uttered them."

The question does not arise in this case, whether, if the witness had stated distinctly and unequivocally the substance of the whole of Mr. Thurman's evidence it should not have been received. Mr. Hays did not pretend to state what was said by Thurman. Witness' remembrance was very imperfect.

The Statute of .Wills, as contained in the Revised Statutes, prescribes the manner in which a will may be admitted to record, and by the 40 section, p. 700, provides: "The *record* of what is proved or deposed in court by witnesses on the motion to admit a will to record, and *any depositions* lawfully taken out of

court on such motion, of witnesses who cannot be produced at a trial afterwards, before a jury, may, on such trial, be admitted as evidence, to have such weight as the jury shall think they deserve."

The statute prescribes an entire new system for the trial of will cases, and the question is submitted to the court, whether the evidence of the witnesses (Hays and Swon) ought not to have been rejected *in toto?* There was no *record* of what Mr. Thurman swore on the motion in the county court to admit the will to record—nor was his deposition taken by the party who introduced him as a witness. Nothing is said in the statute about proving what a witness, who has since died, proved on a former trial, whose evidence was not placed on the record, or his deposition not taken. The maxim, "that the expression of one thing is the exclusion of all others," ought to prevail.

There is another question in the case as to the form of the issue which has been ably presented by Mr. Shuck's brief.

The court is referred to 10*th vol. Bacon's Ab., American edition of* 1856 : " A man may use fair and flattering speeches to move the testator to make his will, and to give his estate unto himself, or some friend of his ; except it be in case where the flatterer first *threatens* him, or puts himself in fear, or to his flattery, joins fraud and deceit ; or where the testator is a person of weak judgment, or under the government of the flatterer, or in danger from him, or when the physician shall persuade his patient under his hand to make his will, and give his estate to himself ; or the wife attending on her husband in his sickness, shall neglect him, and in the mean time flatter him to give her all ; or where the persuader is importunate, and will have no denial ; or where there is another testament made before ; for, in all these cases, the will will be in danger of being avoided. If I be much privy to another man's mind, and he tells me often in his health how he intends to settle his

estate, and he being sick, I, of my own head, draw a will according to his mind, before declared to me, and bring it to him, and ask him whether this shall be his will or no, and he considers of it, and then delivers it back to me, and says, yes; this is a good will."

"A may, by fair argument and persuasion, induce another to make a will even in his favor." (*Ib.* 487.)

Testing this case by the foregoing principles, it will be found: 1. That the testatrix was not a person of weak understanding: 2. That B. Thompson did not threaten his mother; nor was she under his influence; and, thirdly and lastly, that the paper was freely and voluntarily executed by Mrs. Thompson, with a full knowledge of its contents, and should therefore have been admitted to record.

*Rountree & Fogle* for appellees—

1. It is objected by appellant that the jury sworn to try the validity of the paper propounded as the last will and testament of Sarah Thompson, were not properly sworn. By the Code of Practice, sec. 339, issues are of two kinds—law and fact. They arise where a fact is asserted by one party to the pleadings and denied by the other party. The record in this case, page 2, is that B. Thompson offered the paper purporting to be the will of Sarah Thompson for probate, as the will of said Sarah Thompson, and Blackwell and others appeared and entered themselves as parties contestants; hence arose the issue of fact which the jury was sworn to try, and which was found for the contestants. There is no error in this.

A new trial was asked of the court on three grounds. 1. That evidence did not sustain the finding of the jury. 2. That the court erred in its instructions to the jury. 3. That the court erred in admitting proof of what George C. Thurman had

stated in evidence when sworn in this case on a former trial.

By the Code of Practice, sec. 903, "no final judgment shall be reversed by the court of appeals for an error which can be corrected on motion, in the inferior court, until such motion has been made and overruled;" neither by exception nor motion in the progress of the trial did the appellant object to the form of the oath administered to the jury. The objection is now for the first time made in this court.

By reference to the *Civil Code, section* 369, enumerating the causes for which a new trial may be granted, it will be seen that no one of the right causes mentioned is broad enough to meet the objection to the swearing of the jury in this case; and this objection cannot now avail.

2. George C. Thurman had been examined as a witness when this will was exhibited for probate in the county court, and having died, proof of what he stated on his examination before the county court was admitted. This is complained of. The evidence was properly admitted. It was not hearsay, it was an examination of a witness in a judicial controversy where the same issue was involved, and a fair opportunity for cross-examination, and though it was not preserved in writing, it was competent evidence. (1 *Starkie's Ev.*, 42 *top page, side page* 43; 1 *Greenleaf, chap.* 10, *page* 199, *sec.* 163.)

3. The appellants complain of the instructions of the court to the jury. They are not objectionable. The first, in substance, tells the jury that if they believe, from the evidence, that the testatrix signed and acknowledged, without hearing it read or knowing its contents, that they should find against the will. To this no objection was made.

The second instruction, in substance, is that if the jury believe that B. Thompson, from his relationship to the testatrix, had acquired great weight and influence over her in her aged and feeble condition, and taking advantage of that influence had pro-

cured the paper to be written by Thurman, dictated by himself, and had caused it to be signed by the testatrix when she did not understand its contents, that they should find against the paper. This is believed to be the law of the case, and not in conflict with the case in 7 *B. Monroe* referred to.

A recapitulation of the evidence is not deemed necessary, as it will be examined by the court. It is sufficient to say that in our judgment the evidence clearly sustains the finding of the jury, and that the proof sustains the following propositions :

1. That Sarah Thompson was not present when the paper purporting to be her will was prepared, and that she did not, by any previous instruction, dictate its provisions. McElroy, the witness introduced for that purpose, fails to show any instructions on the subject, and the proof fails to show that the will was ever read to the testatrix. See *Williams on Executors*, 1 *volume*, 17 *top page, side page* 18, *ed. of* 1849; *same book, top page* 293, *side page* 294, which shows that in cases of great bodily infirmity the presumption of knowledge of the contents of a will, arising from the fact of signing ceases, and satisfactory evidence of knowledge in fact of the contents must be adduced.

2. The evidence clearly shows that from the situation and connection of B. Thompson with the testatrix, and her age and weakness of mind, the jury were authorized to infer his undue influence over her, when taken in connection with the provisions made for him, beyond that of other heirs.

3. The proof was satisfactory to show that the executor, B. Thompson, and who is the principal devisee after the date of the will, denied on oath that his mother had any will.

4. No sufficient reason is shown for such inequality in the disposition of her property by the testatrix. She had been twice married, and Mr. Blackwell and S. D. Sandusky are the only children of a child by the first husband. The other parties are her chil-

dren and grand-children by her last marriage. A. Thompson and Susan McKarne grand-children; And it also appears in proof that she had expressed an intention to give her grand-children equal shares of her estate.

The verdict and judgment are correct.

*C. A. Wickliffe* on the same side—

The grounds for the new trial moved for by appellants has been stated by adjunct counsel. No other grounds were stated or relied upon in the court below.

It is now insisted by appellants that the record presents other grounds not presented to that court, upon which the decision should be reversed, and a new trial ordered. This court will not reverse upon a point which might have been, but was not made in the court below.

The new question suggested here, for the first time, is as to the mode of swearing the jury. The record shows that the jury was sworn "well and truly to try the issue." It is insisted that the precise words of the Revised Statutes should have been used in swearing the jury, and that the record does not show that the jury passed upon the will. The record does show that not only a copy, but that the original will was in the record before the jury, by consent of the parties. The original will is made part of the record, and is sent up here by the clerk as part of the record. It is sufficiently identified by the finding of the jury, and condemned. If there was any good objection to the form of the oath administered to the jury, it should have been made when they were sworn—certainly stated as a ground for the new trial to authorize this court now to take notice of it.

But it is said there was no issue to try. The law makes the issue, and the issue is, that one party affirms the paper to be the last will of the supposed testatrix, and the other party denies it.

The introduction of the new chapter on wills made it necessary, perhaps when the contest was not upon the whole will, but only on part of it, or a particular clause, that the form of the oath indicated in that chapter should be pursued; but if not pursued, and the jury sworn to try the case without objection, it is not ground for reversal, as none of the errors assigned for a new trial embrace this point.

Again, it is said the court erred in permitting proof of what George C. Thurman, then dead, had stated, on his examination before the county court, when this will was offered for probate there, in respect to the validity of this will between these same parties. Thurman was examined in chief on that occasion, and cross-examined. This appears to be the main ground relied on for reversal.

The weight of the argument against this evidence was not to the competency, but to the uncertainty and dangerous tendency of such evidence, and this was ably pressed upon the jury. They are misdirected here. It would have been more satisfactory to all parties, and the weight of such evidence more certainly felt by the jury, if the deposition of Thurman had been taken; but a sufficient apology for not doing this was shown.

The admissibility of such evidence is not at this day an open question. The principle has been too long settled and acquiesced in, in Kentucky to be now overturned, it has not been questioned for forty years in our courts. It is not hearsay evidence, it has a nearer affinity to dying declarations; it differs, however, from these in being delivered under the sanctity of an oath; and when the witness has been, or might have been, cross-examined. The rule as established met with opposition, and as, at first acted on, the witness was required to state the precise words, and all the words of the deceased or absent witness; but the more sensible, and practically a safe rule, has been adopted, of requiring that the witnesses be required to state *the substance of all the de-*

*ceased witness swore.* I am satisfied this question has been recognized by this court. I will refer to cases if I can find them. The court is referred to 12 *Wendell*, 41; 2 *Ad. & Ellis*, 3; 10 *Searg. & Rawle*, 14–16; 7 *Ib*. 409; *Phillips' Ev.* 2–15; *Greenleaf, section* 165.

The chapter on wills, (*Revised Statutes*,) makes no change in the evidence in the proof of wills.

Is the verdict in this case sustained by the evidence? This court will not set aside the finding of a jury in opposition to the opinion of the circuit judge who heard the evidence, saw and observed their manner, capacity to testify, when the evidence is conflicting; it was the province of the jury to decide, and this court will not disturb it. But the weight of evidence sustains the finding of the jury.

There is no error in the instructions of the court to the jury, and the evidence before the jury called for just such instructions upon the law arising on the facts proved before the jury.

Judge STITES delivered the opinion of the court:

In July, 1853, a paper purporting to be the last will of Sarah Thompson, deceased, was presented by Barnabas Thompson to the county court of Washington, for probate. The heirs-at-law objected to its admission to probate, and, upon hearing, their objections were sustained, and probate refused. An appeal from this judgment was prosecuted to the circuit court of the county, and upon the finding of a jury against the will the circuit court refused a new trial, and affirmed the judgment of the county court. From that order an appeal is-prosecuted to this court.

It is complained here—

1st. That improper evidence was admitted.

2d. That the verdict was against the evidence.

3d. That the court erred in its instructions to the jury. And,

4th. That the jury was not properly sworn.

THOMPSON
*vs.*
BLACKWELL, &c.

January 3.

Thompson
*vs.*
Blackwell, &c

1st. Upon the trial in the county court, Thurman, the draftsman of the will, was introduced as a witness to prove that he had written the will at the instance and under the direction of the appellant, and not in the presence of the testatrix. Before the trial of the issue in the circut court he died; and notwithstanding the objection of appellant, the circuit judge permitted proof to be made of the statements of the deceased witness on the former trial.

It is objected that this evidence was inadmissible upon two grounds:

1st. That the evidence of the deceased witness, on the trial in the county court, had not been spread upon the record, and was not in the form of a deposition.

In support of this ground, it is contended that the language of the Revised Statutes, (*chap.* 106, *sec.* 40,) virtually excludes any proof of what deceased or absent witnesses may have deposed on the trial in the county court, upon another trial involving the validity of the will, unless the same is preserved in the manner provided in that section, which reads as follows:

"The record of what is proved or deposed in court by witnesses, on the motion to admit a will to record, and any depositions lawfully taken out of court on such motion, of witnesses who cannot be produced at a trial afterwards before a jury, may, on such trial, be admitted as evidence, to have such weight as the jury shall think they deserve."

It will be noticed that this, and the preceding section, follow immediately that section providing for the contesting of wills by non-residents, and authorizing a procedure in chancery by such persons who may choose to contest a will, within a certain time after its admission to probate. The manifest object of the section in question was to give to the will once admitted, and to those claiming under it, as against such non-resident contestants, and others, strangers to the proceeding in the county court, the

1. That provision of the Revised Statutes, chap. 106, sec. 40, in regard to proof of what deceased and absent witnesses had stated on former trials in regard to the matters in controversy in will cases,

benefit of the proof received in the county court on the admission to probate, provided it was preserved either by an entry of record or in the shape of depositions. Much injustice might be done to devisees by depriving them of such testimony in contests involving the validity of a will arising between them and strangers to the proceeding in the county court, years after its admission to probate, when, by reason of death or removal of material and important witnesses, the very evidence which imparted validity to the will, would, except for the provision mentioned, be cut off. It was intended by that section, to furnish to parties interested an opportunity of perpetuating the testimony upon which the will was established, and making it available in all future trials touching its validity. The object was to enlarge the common law rule respecting the admissibility of such evidence, by rendering it available, where properly preserved, against strangers, but not to affect it so far as parties privy to the former trial were concerned. The right to introduce such secondary evidence, upon laying the proper foundation therefor, as against parties privy and having an opportunity to cross-examine, is not, in our opinion, at all impaired or restricted by the section relied on.

The second objection is, that the witnesses who testified as to what Thurman said on the former trial, failed to prove all that he said on his examination in chief and cross-examination.

The rule formerly was that such proof was inadmissible, unless the witness called to prove what the deceased witness testified upon the former trial, could repeat his *precise words*. (4 *Tennessee Reports*, 290.) But this rule has been relaxed, because, as has been said, "it goes, in effect, to exclude this kind of evidence altogether, or to admit it only where, in most cases, the particularity and minuteness of the witness' narrative, and the exactness with which he undertakes to repeat every word of the deceased's testimony, ought to excite just doubts of his own

THOMPSON
*vs.*
BLACKWELL, &c.

was intended to apply particularly to cases where wills had been admitted to record, and again contested by others not parties to the first probate in the county court —thereby perpetuating the testimony—an enlargement of the common law rule. But the right to introduce such evidence against parties privy on laying the proper foundation therefor is not affected by the statute.

2. It is not necessary that a witness, introduced to prove what a deceased or absent witness had proved or stated on a former trial, should be able to give the precise words, or all the words used by such witness; it is sufficient if he be able to give the substance of all that was sworn to by the dec'd or absent witness. (1 *Greenleaf's Ev.* 96.)

honesty, and the truth of his evidence." (*Greenleaf on Evidence,* 196.)

It is now considered sufficient, and has so been held by this court, if the witness is able to state the substance of all that was sworn in the former trial.

Here the witness does not, in so many words, state, or undertake to state, what Thurman said upon his examination in chief and cross-examination, and to distinguish as to each part of his evidence, but he states generally "*the substance of all his evidence.*" This necessarily includes what was elicited on both examinations, cross and in chief, and is within the rule declaring such evidence admissible.

We are, therefore, of opinion that no error was committed in permitting proof of what Thurman said on the former trial.

2d. Without noticing in detail the evidence for and against the will, we deem it sufficient to say that it was somewhat contradictory, and presented an inquiry to be responded to by a jury under proper instructions of the court. The response of the jury in this case is not so variant from the proof as to authorize the interference of the court, and we think the circuit judge properly refused to set aside the finding on the ground that it was opposed to the testimony.

3. In will cases it is the province of the jury to decide, and if there has been no misdirection of the court upon the questions of law involved, the court should not disturb the finding,unless it be so unsupported by proof as to require it.

3d. We perceive no substantial objections to the propositions of law contained in the instructions. They are somewhat obscure in phraseology, but not enough so in our opinion to have confused or misled the jury.

4th. That the jury was not sworn to say "how much of the testamentary paper produced was the will of the testatrix," is not an available objection here. It would have been unavailable after verdict in the court below. The question to be decided by the jury involved the validity of the whole, and not a part of the will, and we cannot perceive how the manner of swearing the jury, which was in the usual mode in such cases, could have operated to the

4. This court has not the power er to reverse a decision of a jury, and judgm't of the court, in a will case, because the jury were not sworn to say how much of the paper produced was the will of the tes-

prejudice of appellant. If he had desired the form of the oath prescribed by the statute to be pursued, he should have objected when the jury were sworn.

It is only for errors prejudicial to the substantial rights of the appellant, that this court can reverse a judgment, and the departure from the mode of swearing a jury prescribed by the statute, when not objected to at the proper time, as in this case, does not, in our opinion, come within that class of errors.

We are, therefore, of opinion that no error exists in the record, and the judgment is affirmed.

tator, if the oath of the jury required them to decide upon the validity of the whole will.— Such objection should have been made at the swearing of the jury. No substantial right of the party has been prejudiced, —for which alone this court can reverse.